**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **DAVID E. TRAVIS,** ) | **CASE NO. 1:09CV2606** |
| ) | |
| Petitioner, ) | **JUDGE PATRICIA A. GAUGHAN** |
| ) | |
| v. ) | **MAGISTRATE JUDGE GREG WHITE** |
| ) | |
| **MARGARET BEIGHTLER, Warden,** ) | |
| ) | |
| Respondent. ) | **REPORT AND RECOMMENDATION** |

Petitioner, David E. Travis ("Travis"), *pro se*, challenges the constitutionality of his conviction in the case of *State v. Travis*, Medina County Court of Common Pleas Case No. 06-CR0670. Travis filed his Petition for a Writ of Habeas Corpus (Doc. No. 1) pursuant to 28 U.S.C. § 2254 on November 6, 2009. On May 28, 2010, Warden Beightler ("Respondent") filed her Answer/Return of Writ. (Doc. No. 7.) Travis filed a Traverse on September 30, 2010. (Doc. No. 11.) For reasons set forth in detail below, it is recommended that Travis' petition be denied.

## I. Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts "shall be presumed to be correct." 28 U.S.C. § 2254(e)(1); *see also House v. Bell,* 283 F.3d 37 (6th Cir. 2002). The state appellate court summarized the facts underlying Travis' conviction as follows:

{¶ 12} The jury heard the testimony of the victim, two other State witnesses, and the Defendant.

{¶ 13} The victim, A.S., who was sixteen on the night of the incident, November 23, 2005, testified that she was in the basement of the house in which she lived with her mother, sister (Nicki), Nicki's baby, and Defendant, who was Nicki's boyfriend. A.S. explained that Defendant gave her several shots of peach schnapps within an hour and fifteen minutes, but that she was not intoxicated. A.S. testified that she believed Defendant was intoxicated. A.S. stated that, without her permission, Defendant placed his hands under her shirt and bra and grabbed her breasts. A.S. explained that she did not want him to do this although she did not tell him no. Instead, A.S. explained, she got up, went upstairs and

logged on to the family computer. A.S. testified that Defendant followed her upstairs and masturbated himself while lying on the couch behind her. A.S. explained that she then got up and went into the living room to watch T.V. A.S. stated that she sat on her mother's bed in the living room to watch T.V., as the living room was her mother's temporary bedroom while her mother's room was being remodeled. A.S. explained that she did not go to her room because her door did not lock and she would be trapped with Defendant.

{¶ 14} A.S. testified that as she sat on the bed, Defendant came up in front of her, pushed her down on the bed and put one knee between her legs and the other to the side of her. A.S. stated that she tried to push her body up to shrug him off but was unsuccessful and fell backwards. A.S. indicated that Defendant then put his hands down her elastic-waisted pajama pants and underneath her underwear and put his finger in her vagina. A.S. explained that she did not want this to happen and that she told Defendant, "Don't. I can't do this to my sister." A.S. stated that Defendant then got up and went downstairs to his basement apartment after which A.S. went to her room and cried.

{¶ 15} A.S. explained that she did not immediately tell her mother or Nicki about the incident because she was afraid she would get in trouble for drinking and because she did not want to hurt Nicki, who loved Defendant. A.S. stated that the first person she told was her best friend, C.Z., a few weeks later. A.S. indicated that she told C.Z. that Defendant raped her. A.S. indicated that she told Nicki about what happened in approximately March 2006, after which Nicki ended her relationship with Defendant. A.S. later told her school counselor, who told her mother on September 22, 2006. After that, A.S. stated, she spoke with Detective Davis.

{¶ 16} After the incident, A.S. admitted to writing letters to Defendant while he was incarcerated awaiting trial for the rape of a 12-year-old girl. A.S. admitted that with her letters, she also completed and sent surveys Defendant created, and sent pictures and other items to Defendant. A.S. indicated that she wrote these letters at Nicki's request because Nicki did not have time to write and because of a point-system that Defendant had created, that would allow A.S. to drive Defendant's Camaro automobile as a prize for writing and mailing certain things to Defendant. A.S. explained that at the time she started writing, she had not yet told Nicki about the incident, and A.S. and Nicki believed Defendant that he was innocent of the offense against the 12-year-old girl. A.S. acknowledged that she flirted with Defendant and confessed sexual fantasies to him in her letters, as well as gave him her bra and panty size. However, A.S. explained, she only did so because Defendant asked for this information and gave A.S. "points" that would allow her to drive Defendant's Camaro. A.S. admitted that her reasoning was "stupid," "unbelievable," and "incredible." A.S. testified that she told Defendant in her letters that the incident was a "mistake * * * because he was cheating [on Nicki] because it was not consensual."

{¶ 17} A.S. admitted also to writing to Defendant after he was convicted of the other incident and had been transferred to prison in September 2006. A.S. indicated that the letter she sent to Defendant was in response to a letter he wrote to her threatening to attempt to take custody of Nicki's little girl, who Defendant believed was his daughter. A.S. indicated that she told him in her letter that he would never get custody of the little girl because he was a rapist.

{¶ 18} On cross-examination, A.S. explained that she did not initially tell Nicki about the incident, despite the fact that Nicki was then engaged to marry

2

Defendant, because she "was afraid [she] was going to lose her" and because she did not think Nicki would believe her as Nicki did not believe the other accusation against Defendant. A.S. also admitted that there was probably something she could have done to get Defendant off of her during the rape, but she did not.

{¶ 19} C.Z. testified that A.S. told her that Defendant raped her a few weeks after it happened. C.Z. indicated that A.S. gave her the details of what happened. C.Z.'s testimony supported that of A.S. Defense counsel did not lodge any objection during C.Z.'s testimony.

{¶ 20} Detective Davis testified that he learned of the incident from a school counselor. He interviewed A. S., C.Z. and A. S.'s mother and prepared a report, the facts of which supported A.S. and C.Z.'s testimony. The detective explained that he then went to prison to talk to Defendant. The detective testified that he told Defendant he was there to talk to him about an allegation, but did not divulge any names or details. Defendant responded that he knew the detective was there to discuss Nicki's paternity claim. When the detective told him he was there to discuss the allegation by A.S., Defendant refused to talk to the detective. The detective acknowledged that there was no physical evidence of the incident and that his report did not indicate that he ever told Defendant that he was there to talk to him about A.S.'s allegations. Defense counsel did not lodge any relevant objection to the detective's testimony.

{¶ 21} Defendant testified that he had a brother-sister relationship with A.S. On the night in question, Defendant testified that he and A.S. were drinking in his basement apartment and that he asked A.S. to show him her breasts. Defendant stated that A.S. lifted her shirt and showed him her breasts and then went upstairs with her shirt lifted. When they were upstairs, Defendant admitted to touching A.S.'s breasts after which he went back to his apartment. Defendant indicated that A.S. never objected to his touching and that the conduct was completely consensual. In fact, Defendant asserted, A.S. indicated that she enjoyed the event in a letter to him in jail. Defendant also maintained that, in their letters to each other, he and A.S. mutually apologized for the incident because of how they could have hurt Nicki.

{¶ 22} Defendant testified that the family ate Thanksgiving dinner together the next day and that everything was fine between him and A.S. Defendant stated that he and A.S. wrote flirtatious letters to each other in prison, but that they were harmless as they both loved Nicki. Defendant's description of the letters does not contradict other testimony, except as to the last letter A.S. purportedly wrote.

{¶ 23} Defendant indicated that A.S. had never accused him of raping her and that he first learned about her accusations in September 2006, when A.S. wrote him a letter threatening to make up charges against him if he did not stay out of her and Nicki's lives.

{¶ 24} Defendant's letters to A.S. were admitted at trial; however, the only writing from A.S. to Defendant offered at trial was a survey that Defendant created and A.S. completed in September 2006. Defendant explained that A.S.'s letters disappeared during his transfer between jail and prison and that it was his fault that he did not have them. Defendant's letters to A.S. support A.S.'s testimony that Defendant requested the information and pictures described above and that Defendant created the point system and the prizes related thereto. Defendant's letters also reference letters written by A.S., which purportedly

3

> contained the pictures and information about which A.S. testified. Defendant acknowledged on cross-examination that it was strange, given that Defendant was a former police officer, that he would have kept A.S.'s survey, but not the letter that would exonerate him. Defendant acknowledged that he did not know what happened to A.S.'s threatening letter.

*State v. Travis,* 2008 WL 482603,**2-5 (Ohio App. 9th Dist., Feb. 25, 2008).

## II. Procedural History

### A. Conviction

On April 19, 2007, a Medina County Grand Jury charged Travis with one count of rape in violation of Ohio Revised Code ("O.R.C.") § 2907.02(a)(2) and one count of gross sexual imposition in violation of O.R.C. § 2907.05(A)(1). (Doc. No. 7-1, Exh. 1.) On March 6, 2007, after a bench trial, Travis was found guilty as charged and sentenced to an aggregate prison term of seven years. *Id*. at Exh. 2.

### B. Direct Appeal

On March 29, 2007, Travis, through new counsel, filed a Notice of Appeal with the Court of Appeals for the Ninth Appellate District ("state appellate court"), raising two assignments of error:

1. The trial court denied appellant his due process rights as the conviction for rape was against the manifest weight of the evidence.

2. Appellant's right to due process was denied by his trial counsel's ineffective representation during the bench trial.

*Id*. at Exh. 4. On February 25, 2008, the state appellate court affirmed Travis' conviction. *Id*. at Exh. 6.

On April 7, 2008, Travis, *pro se*, filed a Notice of Appeal with the Supreme Court of Ohio presenting three propositions of law:

1. The trial court denied Appellant his due process rights as the conviction for rape was against the manifest weight of the evidence.

2. Appellant's right to due process was denied by his trial counsel's ineffective representation during the bench trial.

3. Appellant's constitutional right to effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitutiton and Article I, Section 10 of the Ohio Constitution was violated by appellate counsel who failed to raise dead-bang winners on appeal:

>    A.   Appellate counsel failed to raise issue of insufficient evidence even though trial counsel preserved issue.
>
>    B.   Appellate counsel failed to raise issue of trial court error in denying Appellant's Motion for New Trial.

*Id*. at Exh. 8. On August 6, 2008, the appeal was dismissed as not involving any substantial constitutional question. *Id*. at Exh. 10.

### C. Motion for New Trial

On May 14, 2007, while the direct appeal was pending, Travis, through trial counsel, filed a motion for a new trial. Attached to the motion was a letter written by the victim to Travis and three pages from the trial transcript. *Id*. at Exh. 11. After oral arguments, the trial court denied the motion on June 1, 2007. *Id*. at Exh. 13. Travis did not appeal this ruling.

### D. Federal Habeas Petition

On November 6, 2009, Travis filed a Petition for Writ of Habeas Corpus and asserted the following grounds for relief:

> **GROUND ONE**: Petitioner was deprived of his constitutional right to effective assistance of counsel.
>
> **Supporting Facts**: Trial counsel failed to object to improper testimony; Trial counsel elicited prejudicial testimony from Petitioner about his prior bad acts during direct examination.
>
> **GROUND TWO**: Appellate counsel was ineffective for failing to champion Petitioner's cause skillfully.
>
> **Supporting Facts**: Appellate counsel failed to raise meritorious issues in favor of weaker claims. Specifically, counsel failed to argue that petitioner's conviction was not supported by sufficient evidence; and that the trial court erred by denying his motion for new trial.

(Doc. No. 1.)

### III. Review on the Merits

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997). The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

5

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Clearly established federal law is to be determined by the holdings of the United States Supreme Court. *See Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law." *Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002)).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413. By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law. *Id.* at 410-12. "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

**A. Ground One:**

Travis contends that he was denied effective assistance of trial counsel. (Doc. No. 1 at 5.) Specifically, he alleges that counsel failed to object to improper testimony and that counsel

6

elicited damaging testimony about Travis' prior conviction. *Id.* Respondent argues that the state appellate court decision was both correct and reasonable in light of the facts and the relevant case law. (Doc. No. 7 at 16.) Further, Respondent argues that the objectionable or hearsay statements Travis refers to in his state appellate brief were admissible under Ohio law. (Doc. No. 7 at 15.)

The state appellate court, after setting forth federal law and reviewing the trial transcript, found Travis had failed to establish that his counsel was ineffective:

> {¶ 30} "This [C]ourt analyzes claims of ineffective assistance of counsel under a standard of objective reasonableness." *State v. Cromartie*, 9th Dist. No. 06CA0107-M, 2008-Ohio-273, at ¶ 24, *citing Strickland v. Washington* (1984), 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 and *State v. Bradley* (1989), 42 Ohio St.3d 136, 142, 538 N.E.2d 373. Using this standard, Defendant is required to demonstrate deficiency in the performance of counsel "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and that the errors made by counsel were "so serious as to deprive the defendant of a fair trial[.]" *Strickland*, 466 U.S. at 687. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" Id. at 689. "Trial strategy 'must be accorded deference and cannot be examined through the distorting effect of hindsight.' " *Cromartie* at ¶ 24, *citing State v. Conway*, 109 Ohio St.3d 412, 848 N.E.2d 810, 2006-Ohio-2815, at ¶ 115.
>
> {¶ 31} "A defendant must demonstrate prejudice by showing that, but for counsel's errors, there is a reasonable possibility that the outcome of the trial would have been different." *Cromartie* at ¶ 25, *citing Strickland*, 466 U.S. at 694. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. "Speculation regarding the prejudicial effects of counsel's performance will not establish ineffective assistance of counsel." *Cromartie* at ¶ 25, *citing State v. Downing*, 9th Dist. No. 22012, 2004-Ohio-5952, at ¶ 27.
>
> {¶ 32} As we stated in *State v. Barrios*, 9th Dist. No. 06CA009065, 2007-Ohio-7025:
>
> "We have consistently held that 'trial counsel's failure to make objections is within the realm of trial tactics and does not establish ineffective assistance of counsel.' *State v. Taylor*, 9th Dist. No. 01CA007945, 2002-Ohio-6992, at ¶ 76; *State v. Windham*, 9th Dist. No. 05CA0033, 2006-Ohio-1544, at ¶ 24; *State v. Guenther*, 9th Dist. No. 05CA008663, 2006-Ohio-767, at ¶ 74. * * * '[T]here are numerous avenues through which counsel can provide effective assistance of counsel in any given case, and debatable trial strategies do not constitute ineffective assistance of counsel.' *State v. Diaz*, 9th Dist. No. 04CA008573, 2005-Ohio-3108, at ¶ 23." *Barrios* at ¶ 12.
>
> Thus, Defendant's assertion that he was denied the effective assistance of counsel because his attorney failed to make objections to allegedly speculative, hearsay or irrelevant testimony is without merit.
>
> {¶ 33} Defendant also maintains that he was denied the effective assistance of counsel when his own attorney elicited testimony about his prior rape charge. We disagree. Defendant argued at trial and on appeal that his conviction was against the weight of

the evidence because A.S.'s story was not credible. Defendant asserts that A.S.'s behavior of writing to him when he was in jail, especially after he had been charged with raping another victim is not conduct consistent with that of a rape victim. This defense theory is supported by the context in which defense counsel asked the allegedly improper questions.

Q. After Thanksgiving of 2005 and before your conviction of the first offense, what is your relationship like with [A.S.]?

\* \* \*

Q. During your time at Medina County, did she ever accuse you of raping her?

A. No.

Q. Did she ever discuss the day before Thanksgiving with you?

A. Yes.

Q.-in those letters? Did she discuss it in a way that she accused you of rape?

A. No.

Q. After your incarceration-you were essentially convicted of rape in another case, correct?

A. Correct.

Q. You then went to a series of places in the prison system?

A. Yes.

Q. Did you ever receive any letters from her while you were in prison?

A. Yes. Two.

{¶ 34} Even if defense counsel's questions were not intended to support a defense theory at trial, counsel's attempt to lessen the impact of evidence of defendant's prior bad acts by admitting them is considered sound trial strategy. *See State v. White* (1998), 82 Ohio St.3d 16, 24, 693 N.E.2d 772 (holding that defense counsel's questions eliciting testimony of prior bad acts was an attempt to lessen the blow of this evidence).

*State v. Travis*, 2008 WL 482603, \*\*6-7  (Ohio App. 9 Dist., Feb. 25, 2008).

To establish ineffective assistance of counsel, a petitioner must demonstrate that his counsel's conduct was so below acceptable standards of representation that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment to the United States Constitution. *See Strickland v. Washington*, 466 U.S. 668 (1984); *United States v. Bavers*, 787 F.2d 1022 (6th Cir. 1985).  A petitioner also must demonstrate that a trial counsel's performance prejudiced the

petitioner's defense to such an extent that it rendered the proceeding unfair. *Id*. To establish prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. In other words, a counsel's deficient performance must have "caused the defendant to lose what he otherwise would probably have won" and it must have been "so manifestly ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992). Both prongs of the test must be met, but courts are not required to conduct an analysis under both. *Strickland*, 466 U.S. at 697. For example, the court need not address the question of competence if it is easier to dispose of the claim due to the lack of prejudice. *Id*; *Baze v. Parker*, 371 F.3d 310, 321 (6th Cir. 2004).

"[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Mere disagreements by a defendant with tactics or strategies employed by counsel are not enough to support a claim of ineffective assistance of counsel and there is a presumption that the challenged conduct of a petitioner's counsel was a matter of strategy. *Id*. at 689; *see also United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

Alleged trial errors in the application of state procedure or evidentiary law, particularly regarding the admissibility of evidence, are typically not cognizable on habeas review. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Dep't. of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). "[Q]uestions concerning the admission of evidence that may be unfairly prejudicial are committed to the sound discretion of the trial court." *Oliphant v. Koehler*, 594 F.2d 547, 555 (6th Cir. 1979); *see also Johnson v. Karnes*, 198 F.3d 589, 593 (6th Cir. 1999) ("[A]n inquiry as to whether evidence was properly admitted or improperly excluded under state law 'is no part of a federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.'") (citations omitted). Such claims are only cognizable where the disputed evidence rendered the trial "so fundamentally unfair as to constitute a denial of federal rights." *Clemmons v. Sowders*, 34 F.3d 352, 356 (6th Cir. 1994).

Travis argues that there were several instances during trial that counsel did not object to speculative or inadmissible hearsay. Specifically, he indicated that A.S., the victim, was allowed to offer speculation as to what he was thinking during the following colloquy:

Q. Why did you go sit on the bed? Why didn't you go to your room?

A. Because, for one, I don't have a TV in my room, and even if I did, he would have followed me in there and I would have been trapped. (Tr.p. 41, at 13-17.)

(Doc. No. 7-1, Exh. 4 at 7.) Respondent contends that A.S. was simply testifying as to her motives for her actions. *Id*.

Travis next claims that C.Z.'s[1] testimony at trial that Travis had "raped [A.S."] was either inadmissible hearsay or irrelevant and that counsel failed to object throughout C.Z.'s testimony. *Id.* Respondent claims that pursuant to Ohio Evidence Rule 801(D)(1), because A.S. – the declarant – testified and was cross-examined, the statements she made to C.Z. were not hearsay. (Doc. No 7 at 15.)

Although the state appellate court did not specifically address these arguments, it cited Ohio law holding that "trial counsel's failure to make objections is within the realm of trial tactics and does not establish ineffective assistance of counsel," and, therefore, concluded that trial counsel was not ineffective. These statements are not hearsay under Ohio Evidence Rule 801(D)(1) since A.S. testified and was cross-examined at trial and they could be used to rebut Travis' allegations of recent fabrication, or improper influence or motive. Furthermore, courts have long presumed that judges conducting bench trials are able to distinguish between admissible and inadmissible evidence without running afoul of the protections established in the Constitution. *Cooey v. Anderson*, 988 F.Supp. 1066, 1095 (N.D. Ohio 1997) (*citing United States v. McCarthy*, 470 F.2d 222 (6th Cir. 1972)); *State v. Richey*, 64 Ohio St.3d 353, 595 N.E.2d 915 (1992) (In a bench trial, the court is presumed to have considered only the relevant, material, and competent evidence in arriving at its judgment unless it affirmatively appears to the contrary.) (*abrogated on other grounds*). Any limiting instructions otherwise appropriate in a

---

[1] C.Z. is the friend of the victim.

10

jury trial would be unnecessary. In no event would failure to object under these circumstances amount to ineffective assistance of counsel.

Travis next contends that on direct examination counsel asked questions about his prior bad acts. (Doc. No. 11 at 8.) The state appellate court cited questions counsel asked on direct examination to establish that A.S.'s conduct was inconsistent with that of a rape victim as she was writing letters to Travis while he was in prison for raping a minor. (Doc. No. 7 at 13-14.) The appellate court also ruled that it is valid trial strategy for defense counsel to elicit negative information about his client in order to soften its blow, and to deprive the prosecutor of using it to his advantage.

In his Traverse, Travis relies on *Hodge v. Hurley*, 426 F.3d 368 (6th Cir. 2005), a child-rape case in which the Court concluded that trial counsel was constitutionally ineffective for failing to object to prosecutorial misconduct. The *Hodge* Court based its holding on the fact that trial counsel did not make any objections to the prosecutor's statements which were patently improper. *Id* at 378. Specifically, the prosecutor commented on the credibility of a witness and expressed a personal belief that the witness was lying. *Id*.; *United States v. Young*, 470 U.S. 1, 17-19 (1985). The *Hodge* Court discussed when counsel's failure to object could be considered reasonable trial strategy:

> Decisions not to object to inadmissible evidence already heard by the jury can in many cases be classified as part of a deliberate strategy to avoid calling the jury's attention to that evidence. Nonetheless, such concerns are not themselves sufficient to preclude a conclusion of deficient performance, as the court must still consider whether the decision not to object was objectively reasonable. *See Strickland*, 466 U.S. at 688, 104 S.Ct. 2052. By contrast, a failure to object to comments on witness credibility or derogatory statements by the prosecutor is much less susceptible to the argument that it should be considered reasonable trial strategy. *Cf.* Washington, 228 F.3d at 706 ("[A]ccepting as a proper trial strategy a lawyer's doubts over the effectiveness of objections and curative instructions would preclude ineffectiveness claims in every case such as this, no matter how outrageous the prosecutorial misconduct might be.").

*Hodge,* 426 F.3d at 385-386. The *Hodge* Court concluded that trial counsel's performance was deficient as no objections were made to the prosecutor's statements during closing argument, which prejudiced the defense. It then ruled that the state court's application of *Strickland* was unreasonable, especially in a case where the credibility determination was a key issue. *Id*. at 389, fn. 28.

11

*Hodge*, however, is not analogous to the present case, as here, counsel's decision not to object to witness' statements can be part of a deliberate defense strategy.  Furthermore, as outlined by the state appellate court, it may well have been counsel's strategy to discredit A.S. by pointing to her conduct in spite of Travis' rape charge or conviction, or to bring out his prior bad conduct before the prosecutor had the opportunity to do so.  Once again, the judge in a bench trial would more likely put this strategy in proper perspective.  *See Cooey*, 988 F.Supp at 1095.  The Court, therefore, finds that the state appellate court's decision involved a reasonable application of clearly established federal law, as determined by the United States Supreme Court.

Lastly, Travis argues as to the magnitude of alleged errors by trial counsel.  (Doc. No. 11 at 7.)  Travis, however, does not elaborate on this argument.  *Strickland* counsels that an attorney's performance must be considered "in light of all of the circumstances."  *Strickland*, 466 U.S. at 690.  "Rather than evaluating each error in isolation [ . . .], the pattern of counsel's deficiencies must be considered in their totality."  *Goodman v. Bertrand*, 467 F.3d 1022, 1030 (7th Cir. 2006).  *See Mackey v. Russell*, 148 Fed. App'x 355, 365 (6th Cir. 2005) ("[T]he *Strickland* test requires that prejudice be evaluated in light of the cumulative effect of all constitutionally infirm actions by counsel.")  This Court, however, has not found that trial counsel was ineffective and, therefore, a cumulative effect argument is meritless.

### B. Ground Two

Travis argues that appellate counsel was ineffective because he did not raise two meritorious claims before the state appellate court -- that is, whether there was sufficient evidence presented to convict him, and that the trial court erred by denying his motion for a new trial.  (Doc. No. 11 at 10-12.)  Respondent argues that appellate counsel simply "winnow[ed] out weaker arguments on appeal and focus[ed] on those more likely to prevail. . . ."  *Smith v. Murray*, 477 U.S. 527, 536 (1986).  (Doc. No. 7 at 16.)  As the Ohio Supreme Court issued no decision, Travis' second ground must be reviewed *de novo*.

*Strickland* is also applicable to claims of ineffective assistance of appellate counsel.  Thus, Travis must demonstrate that his appellate counsel's performance was deficient, and that the deficient performance so prejudiced the appeal that the proceedings were unfair and the result

12

unreliable. *Strickland*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). An appellant has no constitutional right to have every non-frivolous issue raised on appeal, *Jones v. Barnes*, 463 U.S. 745, 750-54, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983), and tactical choices regarding issues to raise on appeal are properly left to the sound professional judgment of counsel. *United States v. Perry*, 908 F.2d 56, 59 (6th Cir.), *cert. denied*, 498 U.S. 1002, 111 S.Ct. 565, 112 L.Ed.2d 571 (1990). "[O]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of [appellate] counsel be overcome." *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003) (internal quotation marks and citations omitted).

The state appellate court found that Travis' conviction was not against the manifest weight of the evidence. *State v. Travis*, 2008-Ohio-723, *5. The appellate court examined the evidence and concluded that the trial court judge did not lose his way. *Id*. Furthermore, the appellate court noticed that it was "not unreasonable for the trial court judge to believe A.S.'s testimony and disbelieve that of Defendant thereby concluding that Defendant had committed rape and gross sexual imposition." *Id*. His attempt to work backward from a manifest weight challenge to a sufficiency challenge, and then allege that counsel was deficient for not raising such a claim, must fail as a sufficiency challenge is not before the Court.

Furthermore, under Ohio law, the manifest weight of evidence standard is a broader test than the standard used to evaluate the sufficiency of evidence. *See State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717, 720 (Ohio Ct. App. 1983); *see also State v. Thompson*, 127 Ohio App.3d 511, 713 N.E.2d 456, 468 (Ohio Ct. App.), appeal not allowed, 83 Ohio St.3d 1451, 700 N.E.2d 334 (Ohio 1998). As explained in *Echols v. Houk,* 2005 WL 1745475, * 3 (S.D. Ohio Jul. 25, 2005):

> In essence, sufficiency, which implicates due process concerns, tests the adequacy of the evidence in proving the essential elements of the offense charged and presents a question of law, which may not be resolved by the reviewing court through weighing the evidence. In contrast, in determining whether reversal is warranted based on the weight of the evidence, the appellate court sits as a "thirteenth juror" to assess the jury's resolution of conflicting testimony upon review of the entire record, which includes weighing the evidence and all reasonable inferences and considering the credibility of witnesses. *Thompkins*, 678 N.E.2d at 546-47; *see also Tibbs*, 457 U.S. at 41-42; *Martin*, 485 N.E.2d at 720-21.

Moreover, Travis' sufficiency claim here would fail on the merits. The Sixth Circuit has

construed a manifest weight claim as a sufficiency of the evidence claim for habeas review purposes. *Nash v. Eberlin*, 258 F. App'x 761, 765 (6th Cir. 2007) (*quoting Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985)). According to the *Nash* court, Ohio courts adequately passed upon the sufficiency claim because the "determination by the Ohio court of appeals that the conviction was supported by the manifest weight of the evidence necessarily implies a finding that there was sufficient evidence." *Id*. As a sufficiency claim would have been meritless, appellate counsel was not deficient.

Travis also argues that appellate counsel was ineffective because he did not raise the issue of the trial court's denial of a motion requesting a new trial based on newly discovered evidence. (Doc. No. 11 at 13.) Respondent contends that the trial court denied Travis' new trial motion on July 5, 2007, after briefing in the direct appeal was closed and, therefore, appellate counsel could not have raised the issue on appeal.[2] (Doc. No. 7 at 19.) Travis counters that appellate counsel should have sought leave to supplement the brief with the new issue. (Doc. No. 11 at 13.)

On May 14, 2007, Travis, through trial counsel, filed a motion for a new trial based on the discovery of new evidence pursuant to Ohio Crim. R. 33.[3] (Doc. No. 7-1, Exh. 11.) He presented a letter written by A.S. and sent to him while incarcerated. *Id*. Travis claims the

---

[2]Respondent notes that it would have been in the appellate court's discretion whether to reopen briefing for the purposes of expanding the scope of direct appeal. (Doc. No. 7 at 19, fn. 1.) Respondent further notes that, alternatively, Travis could have appealed the denial of the motion itself, but did not do so. *Id*.

[3]Ohio Crim. R. 33(A)(6) states that a new trial may be granted:

> When new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial. When a motion for a new trial is made upon the ground of newly discovered evidence, the defendant must produce at the hearing on the motion, in support thereof, the affidavits of the witnesses by whom such evidence is expected to be given, and if time is required by the defendant to procure such affidavits, the court may postpone the hearing of the motion for such length of time as is reasonable under all the circumstances of the case. The prosecuting attorney may produce affidavits or other evidence to impeach the affidavits of such witnesses.

prosecutor told him at trial that "[i]f you have that letter, you're walking out of here today, right? (Tr. II at page 183, lines 19-20.)" *Id*. Further, Travis indicates that prior to the commencement of trial, he asked the court for a continuance so he could locate the letter, which was denied. *Id.*

On June 1, 2007, the trial court held a hearing on the motion for a new trial. (Doc. No. 7-1, Exh. 13.) In a journal entry dated July 5, 2007, the court noted that Travis testified that the letter had been in "his possession throughout the pendency of his preparation for trial. However, he claims that he either could not find it or he did not have the time to look for it, before he was transported to trial." *Id*. The court notes that Travis claimed to have found the letter after he was convicted. *Id*.

Travis relied on a sentence in the letter as demonstrating his innocence:

> as of u and me we were fine but im a little mad about the one night I didn't want to in how I really felt cause I thought u were marrying Niki but im a little pissed about it cause i didn't want it and I don't want to think about it but it makes me mad.

*Id*. The trial court denied the motion, concluding that Travis' letter was not newly discovered as he had knowledge of the letter even before trial. *Id*. Furthermore, the court found that the letter "did not create a strong probability of a different result at trial. In fact, it is incriminating and furthers the state's case." *Id*.

The Court finds that appellate counsel was not ineffective. Clearly, the newly discovered evidence did not meet the standards of Ohio Crim. R. 33(a)(6). Moreover, when a motion for a new trial has been made in a state court and is under due process review in a federal habeas court, the standard for finding a due process violation is even more demanding. *Guidry v. Sheets*, 2010 WL 1994893, *10 (S.D. Ohio May 19, 2010). To the extent that the denial of a new trial implicates federal due process concerns, it does so only when there has been "'a denial of fundamental fairness or the denial of a specific constitutional right ....'" *Id*. [citation omitted.] Further, "the mere existence of newly discovered evidence relevant to the guilt of the defendant does not implicate constitutional concerns, and thus does not constitute a ground for federal habeas corpus relief, absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Id*; *see also Wright v. Stegall*, 247 Fed. Appx. 709, *3 (6th Cir. 2007) ("The Supreme Court has declined to recognize a freestanding innocence claim in habeas corpus,

15

outside the death penalty context ..."). Travis' letter from the victim does not implicate constitutional concerns. For these reasons, the Court finds that Travis was not denied effective assistance of appellate counsel.

## IV. Evidentiary Hearing

Generally, a habeas petitioner is entitled to an evidentiary hearing in federal court if the petition "alleges sufficient grounds for release, relevant facts are in dispute, and the state courts did not hold a full and fair evidentiary hearing." *Stanford v. Parker*, 266 F.3d 442, 459-460 (6th Cir. 2001) (*citing Wilson v. Kemna*, 12 F.3d 145, 146 (8th Cir. 1994) (citation and internal quotation omitted)). However, a petition may be summarily dismissed if the record clearly indicates that the petitioner's claims are either barred from review or without merit. *Id.*

In this case, upon review of the pleadings and transcripts, the procedural issues presented can be resolved from the record. An evidentiary hearing is, therefore, not required.

## V. Conclusion

For the foregoing reasons, it is recommended that Travis' Petition be denied.

       s/ Greg White
       United States Magistrate Judge

Date: March 29, 2011

**OBJECTIONS**
**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order.** *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981).** *See also Thomas v. Arn*, **474 U.S. 140 (1985),** *reh'g denied*, **474 U.S. 1111 (1986).**